[L. A. No. 22028.   In Bank.   Aug. 13, 1952.]

GEORGE E. CARY et al., Respondents, v. LAWRENCE WENTZEL, Appellant.

A. H. Brazil for Appellant.

Kenneth J. Thayer and Dorsett M. Phillips for Respondents.

TRAYNOR, J.—At about 4 o'clock on the afternoon of December 26, 1948, plaintiffs George and Mabel Cary, husband and wife, were proceeding west on Highway 41 approximately 10 miles east of Paso Robles.  Mr. Cary was driving. The pavement at that point was 14 feet wide and had a center

line that separated the highway into two lanes, for traffic in each direction. The sky was overcast and it was drizzling. For several miles they had been following, at a distance of about 100 feet, an automobile owned and being driven by defendant, Lawrence Wentzel. Defendant's wife and child were riding with him. Both cars were traveling approximately 35 miles per hour. A third automobile was being driven in the opposite direction by Robert Seelinger, with whom Mrs. Dora Grove was riding as a guest. Defendant's and Seelinger's cars collided, and Seelinger's car swerved in front of and collided with plaintiffs' car. Mrs. Grove died several days later as a result of injuries received in the accident. Plaintiffs and Seelinger were injured, and their cars were damaged.

It is conceded that plaintiffs were not guilty of contributory negligence. The principal issue at the trial was whether defendant or Seelinger was responsible for the first collision. Three witnesses (plaintiffs and Seelinger) testified that defendant's car was being driven partly on the wrong side of the center line; two witnesses (defendant and his wife) testified that Seelinger suddenly crossed the center line into their path.

Defendant was sued by Seelinger, by the heirs of Mrs. Grove, and by the Carys, and the three suits were consolidated for trial. The jury found for defendant in the Seelinger and Grove actions and returned a verdict for plaintiffs in the amount of $1,000 in the Cary action. Seelinger did not move for a new trial and did not appeal; the judgment against him is now final. Mrs. Grove's heirs were granted a new trial, but they later voluntarily dismissed their action. In the Cary case, defendant's motion for a new trial was denied, and plaintiffs' motion for a new trial on the issue of damages only was granted. Defendant has appealed from the order granting a limited new trial and from the judgment. He contends that the jury did not actually determine that he was negligent and that the verdict against him was the result of sympathy or an improper compromise. He therefore seeks a new trial on all issues.

The principles that govern the granting of new trials limited to the damages issue were reviewed in *Leipert* v. *Honold*, *ante*, p. 462 [247 P.2d 324]. We there pointed out that the question is addressed in the first instance to the sound discretion of the trial court. ■ An order granting such a limited new trial will be reversed, however, when it is

shown on appeal that the damages awarded by the jury are inadequate, the issue of liability is close, and other circumstances indicate that the verdict was probably the result of prejudice, sympathy, or an improper compromise.

■ (1) *Inadequacy of damages.* Defendant contends that the $1,000 verdict was less than the undisputed special damages and therefore could not have resulted from a decision by the jury that defendant was negligent. (See *Wallace* v. *Miller*, 26 Cal.App.2d 55, 56 [78 P.2d 745]; *McNear* v. *Pacific Greyhound Lines*, 63 Cal.App.2d 11, 16 [146 P.2d 34].) The amount of plaintiffs' special damages, however, is disputed. Defendant contends that the special damages shown totaled $1,199.* Plaintiffs contend that only $704 special damages were proved, so that the verdict allowed $296 for general damages. The difference between these two versions of the special damages results from defendant's inclusion of $175 for hospital bills and $320 for future dental work. Plaintiffs suggest that the jury may have disallowed the hospital expenses because they related to services that were rendered to Mrs. Cary by Army hospitals and for which Mr. Cary, as a soldier, would not be liable. There was no evidence, however, that would justify such action. The Carys testified that bills from the Army had been received. They agreed on the length of time she had been hospitalized (three and a half months) and on the amount they were charged ($1.75 per day). At no time during the trial was this expense disputed. We cannot assume that the jurors, without evidence to support them, speculated concerning the nature and extent of free hospital service given by the Government to wives of servicemen. If they had concluded that defendant was negligent, they would certainly have awarded plaintiffs the cost of this hospitalization. The expense of future dental work could not, of course, be definitely determined at the time of trial. There can be no doubt, however, that such work had been made necessary by the accident, for three of Mrs. Cary's teeth had been broken and had had to be extracted and others had been cracked and loosened. The only evidence concerning the reasonable value of the needed bridgework was the testimony of Mrs. Cary that her dentist had estimated the expense at $320. In view of the undisputed injuries to her teeth, this estimate was not excessive.

*The figure claimed by defendant is actually $1,219, but it is apparent that an inadvertent error of $20 has been made.

(*Cf. Keogh* v. *Maulding*, 52 Cal.App.2d 17, 18, 21 [125 P.2d 858].)

It must be concluded that there was no legitimate reason that would have prompted the jury to exclude the cost of hospitalization and future bridgework from the special damages necessarily to be allowed in the event defendant were found liable. It follows that defendant is correct in his claim that the verdict for special damages should have been $1,199. The failure to award this minimum amount is a convincing indication that the jury had not reached the conclusion that defendant was negligent.

Moreover, the jury should have allowed general damages for plaintiffs' suffering, inconvenience, and loss of time. Mrs. Cary was seriously injured. She was thrown into the windshield, radio, and heater of their car and sustained lacerations on her forehead, chin, tongue, the inside of her mouth, and her left knee. In addition there were the broken and loosened teeth already mentioned, and bruises on her chest, shoulders, back, and legs. The cut on her chin left a scar. At the time of the trial, almost a year and a half after the accident, she was still bedridden and continued to suffer pain in her back and knee. A number of abscesses on her back developed and persisted to the time of trial; it is possible, however, that the jury concluded that these were related to an earlier disease ("valley fever") from which she had been suffering. Whatever may have been the cause of her continued general disability, it is clear that the injuries received in the accident were painful, extensive, and, in part at least, permanent. Mr. Cary was also injured, but had substantially recovered at the time of the trial. He was thrown against the steering wheel, bending it six inches, and he sustained bruises and cuts on his head, chest, and knee.

The failure of the jury to allow substantial general damages for these injuries as well as for several weeks' loss of use of the automobile during repairs, also indicates that the liability issue had not been decided.

(2) *Evidence of liability.* The jury had only the testimony of the parties themselves from which to determine whether defendant or Seelinger was driving on the wrong side of the road. Seelinger and plaintiffs testified that defendant was at fault; defendant and his wife testified that Seelinger was at fault. It is apparent that the jury's task with respect to this issue was exceptionally difficult.

It is also significant that the testimony of Seelinger and plaintiffs was to a certain extent inconsistent. Seelinger testified that as his car approached defendant's car, he saw defendant's left wheels a foot or two over the center line for a distance of 100 to 200 feet before the accident. Plaintiffs testified, however, that defendant crossed over the line only a short time before the accident and that at the time of the collision defendant's car was still traveling at an angle from the center line of about 25 degrees. Mr. Cary admitted in his testimony, moreover, that he did not state to the officers investigating the accident that defendant had driven on the wrong side of the highway.

(3) *Other circumstances indicating compromise.* The verdict against Seelinger is not inconsistent with the verdict in favor of plaintiffs, for the jury could have concluded that defendant was negligent and that Seelinger was guilty of contributory negligence. The court's instructions, however, limited the issue of contributory negligence to the Seelinger suit; Mrs. Grove was a guest in Seelinger's car and his negligence would not be imputed to her. (*Reynolds* v. *Filomeo,* 38 Cal.2d 5, 9-10 [236 P.2d 801].) The verdict against Mrs. Grove's heirs is therefore at variance with the verdict against defendant in the Cary action—the latter necessarily implies that defendant was negligent whereas the former implies that he was not. One of these verdicts is erroneous, and the gross inadequacy of the award in the Cary case suggests at once where the error lies.

It is contended that the court's failure to give a damages instruction in the Grove case was responsible for the verdict against Mrs. Grove's heirs. This explanation is not persuasive. Special damages covering hospital and funeral expenses were proved by the executor of Mrs. Grove's estate and were at no time disputed by defendant; that much at least would have been allowed by the jury. Moreover, during their deliberations the jurors returned to the courtroom for instructions on questions that were causing difficulty. They would probably have sought similar aid from the court with regard to the measure of damages had they reached that issue and had difficulty in determining it.

We have concluded that the verdict against defendant in the Cary action was the result of a compromise between jurors who believed that defendant should pay substantial damages and jurors who believed that he should pay none. There has not been, therefore, an acceptable determination of de-

fendant's liability, and defendant is entitled to a new trial on that issue.

The judgment and order appealed from are reversed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

Schauer, J., concurred in the judgment.

CARTER, J.—I dissent.

The views which I have expressed in my dissenting opinion in *Leipert* v. *Honold, ante,* p. 462 [247 P.2d 324], this day filed, are equally applicable to this case.

I would, therefore, affirm the order granting a new trial on the issue of damages only.